UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID LIESEN,<br><br>        Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORP.<br><br>        Defendant. | Civil Action No. 1:21-cv-10128 |

## COMPLAINT

1. Plaintiff worked for Defendant International Business Machines Corporation (hereinafter "IBM"). Plaintiff has brought a claim against IBM in arbitration for discrimination under the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.*, in connection with the end of Plaintiff's employment. IBM has sought to enforce strictly a confidentiality clause in its arbitration agreement, which undermines the ability of employees, such as Plaintiff here, from enforcing their rights under anti-discrimination statutes.

2. Plaintiff thus seeks a declaration in this action that this provision of IBM's arbitration agreement is unenforceable. This action is brought pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

**II.**    **PARTIES**

3. Plaintiff resides in Chicago, IL. Plaintiff was formerly employed by IBM and has brought a claim of age discrimination against IBM under the ADEA.

1

4.     Defendant International Business Machines Corp. is a New York corporation with its principal place of business in Armonk, New York.  IBM is a multinational technology company that offers services and goods ranging from computing, cloud platforms, advanced analytics tools, and others.

### III.    JURISDICTION AND VENUE

5.     This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiff has brought a claim pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.  An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2202 that is of sufficient immediacy and reality to warrant declaratory relief. This action concerns whether a provision of Defendant's arbitration provision is enforceable.  Moreover, the underlying relief that Plaintiff seeks against IBM in arbitration falls under federal law, namely the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq*.  Jurisdiction is therefore proper under 28 U.S.C. § 1331.

6.     The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) because IBM's principal place of business is in Armonk, New York.

### IV.    STATEMENT OF FACTS

7.     Plaintiff has brought a claim in arbitration under the ADEA, contending that IBM engaged in age discrimination, which involved a years-long companywide scheme implemented by IBM's top management to build a younger workforce, by reducing its population of older workers in order to make room for the hiring of younger workers.

8.      This discriminatory scheme is detailed in the Second Amended Complaint in the matter of <u>Rusis et al. v. International Business Machines Corp.</u>, C.A. No. 18-cv-08434 (S.D.N.Y.) (Dkt. 179), a class and collective action pending in this district, brought under the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq*.  Briefly stated, in <u>Rusis</u>, the plaintiffs allege that IBM has pushed out thousands of older workers over a period of years, while hiring younger workers (which the company often refers to as "Early Professional Hires" or "New Collar" workers), in order to better compete with newer technology companies, such as Google, Facebook, Amazon, and others.

9.      Indeed, IBM has been investigated for age discrimination by the Equal Employment Opportunity Commission ("EEOC").  Following a multi-year investigation, on August 31, 2020, the EEOC issued a classwide determination in which it found reasonable cause to believe that IBM discriminated against older employees during the period 2013 to 2018.  In its determination letter, the EEOC noted that it had uncovered "top-down messaging from IBM's highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for Early Professional Hires." The EEOC revealed that it had analyzed data from across the company and that it was primarily older workers (more than 85%) who were in the total potential pool of those employees considered for layoff. The EEOC stated in its determination letter that its conclusion was supported by dozens of interviews it had conducted across the company, as well as analysis of data, and it rejected IBM's attempt to justify and defend the layoffs of the 58 charging parties, whose claims had been consolidated for investigation, through individualized explanations.

10. When it laid off employees, IBM avoided providing disclosures of the ages of employees who had been laid off and those not laid off (and other related information), as required by the Older Workers' Benefits Protections Act ("OWBPA"), 29 U.S.C. § 626(f)(1)(H), by not including a waiver of ADEA claims in the release that it asked the employees to sign.  Instead, it offered the employees subject to layoff a very modest severance payment in exchange for a waiver of almost all legal claims, other than a claim under the ADEA.  The agreement provided, however, that if the employee chose to pursue a claim under the ADEA, it would need to be in individual arbitration.

11. Plaintiff signed this arbitration agreement and later brought a claim of discrimination under the ADEA in arbitration.

12. The arbitration agreement includes a provision that states: "Any issue concerning the validity or enforceability of this Agreement . . . shall be decided only by a court of competent jurisdiction."

13. IBM's arbitration agreement includes a confidentiality provision.  IBM has aggressively used this confidentiality provision in order to attempt to block employees, including the Plaintiff, who are pursuing their claims in arbitration from using and sharing information and rulings obtained in their cases with other employees pursuing similar claims, which also challenge the same general practice IBM has engaged in to build a younger workforce by forcing out many older employees. IBM's use of this confidentiality provision runs counter to an objective of the ADEA which is "furthered when even a single employee establishes that an employer has discriminated against him or her. **The disclosure through litigation of incidents or practices that violate national policies respecting nondiscrimination in the work force is itself**

**important.**" McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 358-59 (1995) (emphasis added) (citing Alexander v. Gardner–Denver Co., 415 U.S. 36, 45 (1974) ("[T]he private litigant [in Title VII] not only redresses his own injury but also vindicates the important congressional policy against discriminatory employment practices").

14. Indeed, former IBM employees have brought ADEA claims against IBM and uncovered documents that fall into three categories "(i) age bias was rampant at the executive level, (ii) executives created and implemented the fire-and-hire scheme, and (iii) executives used and encouraged coded language to conceal IBM's illegal actions." Townsley, et. al. v. International Business Machines Corporation, Civil Action No.: 1:20-cv-00969, Dkt. 64 at 3 (W.D. Tex. September 8, 2021). These documents "include, but are not limited to, documents reflecting IBM's CEO having applauded the mocking of older IBM employees as a whole, and other CEO communications expressing dissatisfaction with the percentage of millennials hired by IBM being too low for her tastes." Id. at 13. Although Plaintiff's counsel represent employees who have obtained a number of these incriminating documents in their arbitrations, IBM has resisted producing them (and other relevant documents) in other arbitrations, despite their obvious importance to all claims of discrimination by older workers challenging their layoffs or separations from the company, by invoking the confidentiality provision in its arbitration agreement.

15. This confidentiality provision – and IBM's overbroad use of it - is unconscionable and unenforceable because it unduly hinders employees, such as Plaintiff, from advancing their claims under the ADEA, particularly in such a case that relies heavily on pattern and practice evidence. Numerous courts have limited the

operation of confidentiality provisions in arbitration as "secrecy provisions of the arbitration agreements [that] both affect the outcomes of individual arbitrations and clearly favor Defendants." Schnuerle v. Insights Communications Co., 376 S.W.3d 561, 579 (Ky. 2012) (quoting Acorn v. Household Intern., Inc., 211 F. Supp. 2d 1160, 1173 (N.D. Cal. 2002)).  Courts have stricken confidentiality provisions in arbitration agreements since they give the defendant an "obvious informational advantage." Larsen v. Citibank FSB, 871 F.3d 1295, 1319 (11th Cir. 2017).[1]

16. In arbitration, Plaintiff will likewise be prevented by IBM's confidentiality provision from benefiting from decisions obtained in other similar arbitrations and

---

[1] See also McKee v. AT&T Corp., 164 Wash.2d 372, 398 (2008) (striking a confidentiality provision where the arbitration claimants "are prevented from sharing discovery, fact patterns, or even work product, such as briefing, forcing them to reinvent the wheel in each and every claim, no matter how similar."); Kinkel v. Cingular Wireless LLC, 223 Ill. 2d 1, 42 (Ill. 2006) (finding that confidentiality provisions may be unconscionable when coupled with class action waivers, because such provisions prevent "the claimant [and] her attorney [from] shar[ing] [] information with other potential claimants."); Zuver v. Airtouch Communications, Inc., 153 Wn.2d 293, 299 (Wash. 2004) (finding an arbitration confidentiality provision unconscionable and unenforceable, concluding that "[a]s written, the provision hampers an employee's ability to prove a pattern of discrimination or to take advantage of findings in past arbitrations"; "keeping past findings secret undermines an employee's confidence in the fairness and honesty of the arbitration process, and thus potentially discourages that employee from pursuing a valid discrimination claim."); Ting v. AT&T, 319 F.3d 1126, 1152 (9th Cir. 2003) (recognizing that confidentiality provisions in arbitration agreements hamper ability of claimants to "obtain[] the information needed to build a case"; DeGraff v. Perkins Coie, 2012 WL 3074982, at *4 (N.D. Cal. July 30 2012) (severing confidentiality provision);  Bragg v. Linden Research, Inc., 487 F.Supp. 2d 59 (E.D. Pa. 2007) (finding a confidentiality clause within an arbitration agreement to be unconscionable because it allows a company to "place[] itself in a far superior legal posture by ensuring that none of its potential opponents have access to precedent" and "[t]he unavailability of arbitral decisions could also prevent potential plaintiffs from obtaining the information needed to build a case of intentional misconduct against a company.").

sharing discovery with other arbitration claimants who are pursuing this same claim against IBM.  Courts have recognized that such of information can be critical to employees building a case of discrimination, particularly in pattern or practices cases of discrimination.[2]  Because of this one-sidedness, Plaintiff will be severely hampered, if not fully prevented, from obtaining relief under the ADEA in arbitration.

## COUNT I

Declaratory Judgment Act, 28 U.S.C. §§ 2201-02

An actual controversy of sufficient immediacy exists between the parties as to whether certain provisions within IBM's arbitration agreement, which severely undermine or extinguish Plaintiff's ability to pursue a claim under the ADEA, are enforceable.  Plaintiff seeks a declaratory judgment that the confidentiality provision in IBM's arbitration agreement is unenforceable.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

1. Find and declare that the provision of IBM's arbitration agreement that purports to require arbitration proceedings to enforce the ADEA to be fully confidential, and not allow the sharing of relevant documents by employees bringing such cases, is unenforceable and otherwise void.

2. Any other relief to which Plaintiff may be entitled.

---

[2]  As noted above (paragraph 10), Plaintiff cannot be deemed to have waived their right to build their case under the ADEA because IBM did not provide the disclosures regarding the ages of employees who were laid off and were not laid off, as required by the OWBPA.  See Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426-27 (1998).

        Respectfully submitted,

          David Liesen,

By his attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan (NY Bar No. 2971927)
Zachary Rubin (NY Bar No. 5442025)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com, zrubin@llrlaw.com

Dated:        November 29, 2021